IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

BARBARA A. SWINFORD,  :

        Plaintiff,

  -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.  :

Case No. 3:12-cv-016

District Judge Walter Herbert Rice
Magistrate Judge Michael R. Merz

# REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381(c)(3) as it incorporates §405(g), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986).

Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

To qualify for supplemental security benefits (SSI), a claimant must file an application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With

respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520. First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1990). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to

the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed applications for SSD and SSI on March 11, 2008[1], alleging disability from January 1, 2004, due to diabetes and vision problems. See PageID 168-70; 171-78; 207. The Commissioner denied Plaintiff's applications initially and on reconsideration. See PageID 104-09; 114. Administrative Law Judge Thomas R. McNichols held a hearing, PageID 67-102, and subsequently determined that Plaintiff is not disabled. PageID 50-61. The Appeals Council denied Plaintiff's request for review, PageID 40-43, and Judge McNichols' decision became the Commissioner's final decision. See *Kyle v. Commissioner of Social Security,* 609 F.3d 847, 854 (6th Cir. 2010).

In determining that Plaintiff is not disabled, Judge McNichols found that she has severe intermittent back pain, diabetes mellitus, and obesity, but that she does not have an impairment or combination of impairments that meets or equals the Listings. *Id.*, ¶ 3; PageID 56, ¶ 4. Judge McNichols also found that Plaintiff has the residual functional capacity to perform a limited range of medium work. *Id.,* ¶ 5. Judge McNichols then found that Plaintiff is capable of performing her past relevant work as a cashier. PageID 60, ¶ 6. Judge McNichols concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. PageID 61.

The record contains copies of Plaintiff's emergency room treatment notes dated March, 2004, through September, 2006. PageID 254-67. During that period of time, Plaintiff sought emergency room treatment for complaints of low blood sugar, altered mental status, insulin reaction, and injuries following an automobile collision. *Id.* On each occasion, Plaintiff received treatment and was discharged. *Id.*

---

1 During the administrative hearing, Plaintiff amended her onset date to January 23, 2008. PageID 75.

Examining physician, Dr. Danopulos reported on April 28, 2008, that Plaintiff's complaints included diabetes, with numbness in both hands and feet, right palm early Dupuytren's contractures, low back pain, being overweight, and depression. Page ID 296-304. Dr. Danopulos noted that Plaintiff "gave a reliable history" which included information that she gave herself injections of insulin for diabetes, she had low back pain for the past year, was not able to walk more than a block, and had felt depressed since her mother's death, about five months prior to the examination. *Id.* Dr. Danopulos reported that Plaintiff's musculoskeletal evaluation revealed a normal gait without ambulatory aids, her lumbosacral spine was painful to pressure, paravertebral muscles were soft and painless to palpation and pressure, she got on and off the examining table without difficulty, bilateral straight leg raising were normal, she was able to squat and arise from a squat, and that her toe and heel gait was normal. *Id.* Dr. Danopulos noted that there was no evidence of nerve root compression or peripheral neuropathy and he opined that Plaintiff's ability to do any work related activities was affected and restricted from her long-continuing insulin dependent diabetes, with clinical suggestion of early diabetic neuropathy in both hands and feet with numbness, from her morbid obesity, and from her lumbar spine arthralgias, rule out early arthritis. *Id.* Dr. Danopulos also opined that Plaintiff had circumstantial depression. *Id.*

Plaintiff sought treatment at the Reach Out of Montgomery County clinic in May, 2008, for poorly controlled diabetes and right conjunctivitis. Page ID 306-10. Plaintiff's health care provider at that facility adjusted her insulin dose. *Id.*

Examining psychologist Dr. Flexman noted on May 27, 2008, that Plaintiff reported that she was depressed, crying frequently, was not able to work, felt helpless, hopeless, and did not want to leave her house, or socialize, that she had been fired from her job as a cashier in January,

2008, due to a customer complaint, and that she had been submitting applications for other jobs on a daily basis. Page ID 312-16. Dr. Flexman also noted that Plaintiff's daily activities included taking the bus when she needed to go somewhere, preparing food or going to food pantries, doing dishes, laundry, cleaning, and straightening up around the house, going to the store once or twice a month, playing games and bingo, and attending her grandchildren's activities. *Id.* Dr. Flexman reported that Plaintiff's posture was slumped, she appeared sad, had low energy, her affect was intense and labile, her attitude was depressed, and that she cried during the evaluation. *Id.* Dr. Flexman also reported that Plaintiff's reliability was poor and suggested mild malingering, and that her attention, concentration and recent memory were fair with good effort. *Id.* Dr. Flexman identified Plaintiff's diagnosis major depression, single episode and he assigned Plaintiff a GAF of 50, noting a "symptom severity" GAF of 55 and "functioning severity" GAF of 60. *Id.* Dr. Flexman opined that Plaintiff was mildly impaired in her abilities to understand, remember, and carry out short, simple instructions, to make simple, work-related decisions, and to sustain attention and concentration, and was moderately impaired in her abilities to interact with the public, supervisors, and co-workers and to respond appropriately to work pressures and changes in a work setting. *Id.*

Plaintiff sought emergency room treatment on July 15, 2008, for complaints of chest pain, cough, and shortness of breath. Page ID 386-401. Plaitniff was treated for musculoskeletal chest wall pain, and the emergency room physician noted he could not rule out COPD exacerbation. *Id.*

On July 22, 2008, Plaintiff received emergency room treatment after being found unresponsive at home. PageID 366-84. At that time, it was noted that Plaintiff's blood sugar was

6

38 at home. *Id.* While in the emergency room, Plaintiff reported that she had been feeling depressed and she asked to speak with social services. *Id.* Plaintiff underwent a mental status assessment wherein it was noted her affect and mood were depressed and her diagnosis was identified as depression. Plaintiff's health care provider recommended that she seek outpatient mental health treatment. *Id.*

On August 7, 2008, Plaintiff again sought emergency room treatment after being found unresponsive. PageID 347-65. Plaintiff was treated and released,

Plaintiff was hospitalized March 29-31, 2009, after seeking emergency room treatment for a hypoglycemic incident. Page ID 403-05. During that hospitalization, it was noted that Plaintiff had not seen a physician in more than ten years, had been seen in the emergency room for hypoglycemia about four times in the past four months. *Id.* Plaintiff's health care provider noted that it was noted her diabetes was difficult to control. *Id.* Plaintiff was discharged in good condition. *Id.*

The record contains a copy of Plaintiff's treatment notes from the Five Rivers Health Center dated January 28, through April 10, 2010. PageID 406-12. Those notes reveal that on January 28, 2010, Dr. Barhams reported that Plaintiff had bilateral lower extremity edema, no sensation to the monofilament lower extremity 2/3 up the leg, and that both of her feet were very dry and cracked. *Id.* Dr. Barhams identified Plaintiff's diagnosis as uncontrolled diabetes complication, NOS Type 1, diabetic neuropathy, hypertension, high cholesterol, and depression. *Id.*

Treating physician Dr. Silk with the Five Rivers Health Center reported on February 10, 2010, that Plaintiff exhibited nonpitting lower extremity edema from the mid legs down bilaterally

and he identified her diagnoses as diabetes mellitus, dyslipidemia, hypertension, nicotine dependence, neuropathy, and depression which was not currently an issue for her. *Id.* Dr. Silk reported on April 9, 2010, that Plaintiff had 1+ pitting edema bilaterally near her ankles and that her feet were dry and cracked. *Id.* Dr. Silk also reported that Plaintiff was able to perform part-time sedentary work, but that she was not able to perform either light or medium work. *Id.*

The record contains additional evidence including additional records from Five Rivers Health Center dated August 20, 2010, through September 26, 2011, and an October 30, 2011,report from Dr. Silk. See PageID 414-29. Plaintiff submitted that evidence to the Appeals Council and it was not before Judge McNichols. However, since the Appeals Council denied Plaintiff's request for review, that evidence is not a part of the record for purposes of substantial evidence review of Judge McNichols' decision. *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007), citing, *Cline v. Commissioner of Social Security*, 96 F.3d 146, 148 (6th Cir. 1996) (citation omitted).

Plaintiff alleges in her Statement of Errors that the Commissioner erred by failing to find that she suffers from a severe mental impairment and in determining Plaintiff's residual functional capacity for a limited range of medium work. (Doc. No. 7 and 11). The Court will address Plaintiff's second Error first.

In support of her second Error, Plaintiff argues that the Commissioner erred in finding that she could perform a limited range of medium exertional work. Plaintiff essentially contends that the Commissioner erred by rejecting Dr. Silk's opinion as to her residual functional capacity.

"In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards." *Blakley v. Commissioner of Social Security,* 581 F.3d 399, 406 (6th

Cir. 2009). "One such standard, known as the treating physician rule, requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone of from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Id.*, *quoting*, *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544, (6th Cir. 2004), *quoting,* 20 C.F.R. § 404.1527(d)(2).

"The ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley,* 581 F.3d at 406, *quoting, Wilson,* 378 F.3d at 544. "On the other hand, a Social Security Ruling[1] explains that '[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.'" *Blakley, supra, quoting,* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). "If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley,*582 F.3d at 406, *citing,*

---

[1] FN 1. Although Social Security Rulings do not have the same force and effect as statutes or regulations, "[t]hey are binding on all components of the Social Security Administration" and "represent precedent, final opinions and orders and statements of policy" upon which the agency relies in adjudicating cases. 20 C.F.R. § 402.35(b).

*Wilson,* 378 F.3d at 544, *citing* 20 C.F.R. § 404.1527(d)(2).

"Closely associated with the treating physician rule, the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion." *Blakley,* 581 F.3d at 406, *citing,* 20 C.F.R. §404.1527(d)(2). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Blakley,* 581 F.3d at 406-07,*citing,* Soc.Sec.Rule 96-2p, 1996 WL 374188 at *5. "The *Wilson* Court explained the two-fold purpose behind the procedural requirement:

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. *Snell v. Apfel,* 177 F.3d 128, 134 (2nd Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.

*Blakley,* 581 F.3d at 407, *citing, Wilson,* 378 F.3d at 544. "Because the reason-giving requirement exists to ensure that each denied claimant received fair process, the Sixth Circuit has held that an ALJ's 'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given '*denotes a lack of substantial evidence,* even where the conclusion of the ALJ may be justified based upon the record.'" *Blakley, supra, quoting, Rogers v. Commissioner of Social Security,* 486 F.3d 234, 253 (6th Cir. 2007)(emphasis in original).

Judge McNichols rejected Dr. Silk's assessment finding his opinion was not supported by

10

the evidence of record. Page ID 54. In addition, Judge McNichols found Dr. Silk's opinion was not well-supported by medically-acceptable clinical and laboratory diagnostic findings. *Id.*

First, Dr. Silk and Dr. Barhams' office notes reflect few, if any, objective clinical findings. Page ID 407-12. For example, Dr. Silk documented only nonpitting lower extremity edema from the mid leg down bilaterally. Page ID 409-10. In addition, Dr. Silk reported that Plaintiff reported that Neurontin helped her stay on her feet longer before her feet start hurting. *Id.* Additionally, Dr. Silk's opinion is not supported by the objective test results. For example, no EMG has confirmed neuropathy, even though Judge McNichols did admit that it had been "diagnosed." Page ID 54. Moreover, based on the record before Judge McNichols, Dr. Silk only treated Plaintiff on three occasions before essentially opining that she is disabled. Further, Dr. Silk's opinion is inconsistent with Dr. Danopulos' findings, and with the reviewing physicians' opinions. Page ID 296-304, 336-43. Under these facts, the Commissioner had an adequate basis for rejecting Dr. Silk's opinion.

The Court turns to Plaintiff's first Error. In support of her first Error, Plaintiff argues that the Commissioner erred by failing to find that she has a severe mental impairment.

An impairment can be considered as not severe only if the impairment is a "slight abnormality" which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience. *Farris v. Secretary of Health and Human Services*, 773 F.2d 85, 90 (6th Cir. 1985)(citation omitted); *see also, Bowen v. Yuckert*, 482 U.S. 137 (1987).

Generally, an ALJ does not commit error requiring automatic reversal of the Commissioner's decision and an immediate award of benefits when the ALJ finds a non-severe

11

impairment and determines that a claimant has at least one other severe impairment and then goes on with the remaining steps in the disability evaluation. *See, Maziarz v. Secretary of Health and Human Services*, 837 F.2d 240, 244 (6th Cir. 1987). That is because the ALJ considers all impairments, including non-severe impairments, in determining residual functional capacity to perform work activities. *Id.*

As noted above, examining psychologist, Dr. Flexman and Plaintiff's treating physician, Dr. Silk, diagnosed Plaintiff with mental impairments which affected her ability to perform work-related activities. Page ID 312-16, 407-12. In addition, the reviewing mental health experts reported that Plaintiff had a mental impairment that affected her ability to perform work-related activities and they opined that in some areas of functioning she is moderately limited. Page ID 322-35.

In spite of the significant amount of evidence of a severe mental impairment, Judge McNichols failed to recognize the presence of a severe mental impairment although he continued through the sequential evaluation process to step 4 before concluding that Plaintiff is not disabled. However, in determining Plaintiff's residual functional capacity, Judge McNichols failed to consider any mental limitations whatsoever. Rather, Judge McNichols specifically considered only Plaintiff's alleged exertional limitations. *See* Page ID 56, ¶ 5.

Under these facts, this Court cannot say that this matter falls within the parameters of *Maziarz, supra*. In other words, because the Commissioner did not take into consideration any of the evidence that Plaintiff has a severe mental impairment, including the evidence from his own reviewing mental health specialists, nor the effects of such impairment on Plaintiff's ability to perform work-related activities, the Commissioner did, in this case, commit error.

This Court concludes that the Commissioner's decision that Plaintiff is not disabled is not supported by substantial evidence on the record as a whole.

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to remand the matter for rehearing or to reverse and order benefits granted. The Court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. §405(g). If a court determines that substantial evidence does not support the Commissioner's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171, 176 (6th Cir. 1994) (citations omitted); *see also, Newkirk v. Shalala,* 25 F.3d 316 (6th Cir. 1994).

The fourth sentence of 42 U.S.C. Sec. 405(g) directs the entry of a final appealable judgment even though that judgment may be accompanied by a remand order. *Sullivan v. Finkelstein,* 496 U.S. 617 (1990). The fourth sentence does not require the district court to choose between entering final judgment and remanding; to the contrary, it specifically provides that a district court may enter judgment "with or without remanding the cause for rehearing." *Id.*

This Court concludes that not all of the essential factual issues have been resolved. Specifically, the Court notes that although there is evidence that Plaintiff has a severe mental impairment, the question remains as to whether Plaintiff is nevertheless capable of performing substantial gainful activity. Therefore, this matter should be remanded for additional administrative proceedings to determine whether, in light of Plaintiff's mental impairment, she is capable of performing substantial gainful activity.

It is therefore recommended that the Commissioner's decision that Plaintiff is not disabled be reversed. It is further recommended that this matter be remanded to the Commissioner for further administrative proceedings. Finally, it is noted that this is a Fourth Sentence remand and it is therefore recommended that this matter be terminated on the Court's docket.

August 27, 2012                                         s/Michael R. Merz
                                                   United States Magistrate Judge


## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).